**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| SANTE SANTHANAM CHARY, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  4:20-CV-00111-ALM- |
| v. | § | CAN |
| | § | |
| CENTRAL MORTGAGE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Arvest Central Mortgage Company's ("Defendant" or "Arvest") Motion for Summary Judgment ("Motion for Summary Judgment") [Dkt. 26].  After reviewing the Motion for Summary Judgment, and all other relevant filings, the Court recommends that Defendant's Motion for Summary Judgment [Dkt. 26] be **GRANTED**.

**RELEVANT PROCEDURAL HISTORY**

Plaintiff Sante Santhanam Chary ("Plaintiff") initiated this lawsuit on November 4, 2019, in the 471st Judicial District Court for Collin County, Texas, seeking to prevent foreclosure of the real property located at 3109 Sleepy Hollow Drive, Plano, Texas 75093 (the "Property") [Dkt. 2 at 1].  Plaintiff is represented by counsel in this action.  Plaintiff's suit was removed to the Eastern District of Texas on February 14, 2020 [Dkt. 1].[1]

*Live Pleading*

Upon removal, the Court entered an Order and Advisory and directed "the parties to replead *as necessary* to comply with the Federal Rules of Civil Procedure and the Court's Local Rules" [Dkt. 6 at 1 (emphasis in original)].  Plaintiff, who again is represented by counsel, elected not to

---

[1] Defendant noted in its Notice of Removal that it was never served in the state court case, and thus, its removal to this district is timely [Dkt. 1 at 2].

file an amended petition, thus his Original Petition filed in the state court [Dkt. 2] remains the live pleading. Therein, Plaintiff asserts five claims against Defendant: (1) improper notice of default/notice of acceleration; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; (4) violations of the Real Estate Settlement Procedures Act ("RESPA")/Regulation X; and (5) violations of the Texas Fair Debt Collection Practices Act ("TDCA") [Dkt. 2]. Plaintiff seeks to recover actual and exemplary damages, and attorney's fees [Dkt. 2 at 7].

*Motion for Summary Judgment*

On October 30, 2020, Defendant filed its Motion for Summary Judgment [Dkt. 26].[2] Defendant argues it is entitled to summary judgment on each of Plaintiff's claims as Plaintiff has not asserted any viable causes of action against Defendant [Dkt. 26]. Plaintiff failed to respond to Defendant's Motion for Summary Judgment. Under Eastern District Local Rule CV-7(d), "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." Local Rule CV-7(d). Defendant's Motion for Summary Judgment is ripe for consideration.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses, to help "secure the just, speedy and inexpensive determination of every action." *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp.*

---

[2] The Parties' original deadline to file dispositive motions was September 11, 2020 [Dkt. 10 at 2]. On September 11, 2020, Defendant filed an Unopposed Motion to Extend Dispositive Motions Deadline [Dkt. 15], which the Court set for a hearing on September 29, 2020 [Dkt. 17]. At hearing, the Court also addressed a discovery dispute, and ordered the Parties to conduct the deposition of Plaintiff by October 19, 2020. The Parties requested the dispositive motion deadline be extended one week past the Plaintiff's deposition. The Court took the extension under advisement, ultimately granting the request and extending the dispositive motion deadline to October 30, 2020 [Dkt. 21 at 1].

*v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All inferences must be construed in the light most favorable to the nonmoving party. *See id.*; *Osprey Ship Mgmt. Inc. v. Foster*, 387 F. App'x 425, 429 (5th Cir. 2010). "[T]he substantive law will identify which facts are material. This means [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir.), *cert. denied*, 140 S. Ct. 653 (2019) (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)) (internal quotations omitted).

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191 (5th Cir. 2011). "[W]here the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted). However, if the movant does not bear the burden of proof at trial, the movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir. 2020) (citing *Celotex*, 477 U.S. at 323). Once the movant has carried its burden, the nonmovant "must go

beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Malbrough v. Stelly*, 814 F. App'x 798, 802 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50).

Notable herein, a court may not grant a motion for summary judgment for the sole reason that the nonmovant fails to file an appropriate opposition. *Defrese-Reese v. Healthy Minds, Inc.*, No. CV 18-1134, 2020 WL 4457773, at *4 (W.D. La. Aug. 3, 2020) ("If a party fails to oppose a motion for summary judgment, the moving party is not automatically entitled to judgment in its favor.") (citing *John v. State of La. (Bd. of Trs. for State Colls. and Univs.)*, 757 F.2d 698, 708 (5th Cir. 1985)). Rather, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [the nonmovant's] unsworn pleadings, which do not constitute summary judgment evidence[,]" and a court may accept as undisputed the movant's evidence. *Allstate Vehicle & Prop. Ins. Co. v. Daum*, No. 3:20-CV-0671-D, 2020 WL 4883956, at *2 (N.D. Tex. Aug. 20, 2020) (citing *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996)).

**SUMMARY JUDGMENT EVIDENCE**

Defendant submits the following evidence in support of its Motion for Summary Judgment:

Exhibit A [Dkt. 26-1]: Declaration of Representative of Arvest Central Mortgage Company, Andrew S. Gordon, Default Risk Manager/Vice President, with exhibits A-1 through A-6 attached thereto;

> Exhibit A-1 [Dkt. 26-2]: Texas Home Equity Note in the amount of $791,000 executed on November 30, 2006 by Plaintiff ("Note");
>
> Exhibit A-2 [Dkt. 26-3]: Texas Home Equity Security Interest dated November 30, 2006 ("Deed of Trust");
>
> Exhibit A-3 [Dkt. 26-4]: Assignment of Deed of Trust from Mortgage Electronic Registration Systems, Inc. to Defendant, dated March 5, 2012;

> Exhibit A-4 [Dkt. 26-5]: Notice of Default and Demand for Payment dated March 12, 2019;
>
> Exhibit A-5 [Dkt. 26-6]: Notice of Acceleration and Notice of Posting and Foreclosure Sale dated October 15, 2019;
>
> Exhibit A-6 [Dkt. 26-7]: Loan Modification Agreement dated March 28, 2009, filed in the Collin County Public Records on August 21, 2009, document no. 20090821001054710.

No objections have been made to any of Defendant's summary judgment evidence; nor has Plaintiff proffered any evidence in support of his claims.

Defendant's uncontroverted summary judgment evidence demonstrates:

On November 30, 2006, in connection with the purchase of the Property, Plaintiff executed a Note in the amount of $791,000.00, which was secured by a Deed of Trust, also signed by Plaintiff[3] (collectively, the "Loan") [Dkt. 26-2; 26-3]. In 2009, Plaintiff applied for and received a loan modification [Dkt. 26-7]. This modification was formally executed on March 28, 2009, and modified Plaintiff's interest rate and payment [Dkt. 2, 4]. The 2009 loan modification was filed in the Collin County Public Records on August 21, 2009, as document number 20090821001054710 [Dkt. 26-7 at 7]. On March 5, 2012, Mortgage Electronic Registration Systems, as nominee for Willow Bend Mortgage Company, assigned the Deed of Trust to Defendant; Defendant is the current beneficiary under the Deed of Trust [Dkt. 26-1 at 3; 26-4].

In October 2018, Plaintiff defaulted on the Loan, failing to make any and all subsequent payments thereafter [Dkt. 26 at 2]. It is undisputed that the Loan is currently in default. Following the 2018 default, Plaintiff was "provided with a loss mitigation application and request for documents so that Arvest could review [Plaintiff's] status to determine if any loss mitigation relief was available for [Plaintiff] in relation to his default under the note on October 1, 2018" [Dkt. 26-

---

[3] The Note is signed only by Plaintiff, while the Deed of Trust was signed by both Plaintiff and presumably his spouse, Lata Chary, a non-party to the current action [Dkt. 26-3 at 14].

1 at 3]. However, Plaintiff "failed to submit a complete loss mitigation application to Arvest and [] also failed to submit any of the requested documentation to Arvest" [Dkt. 26-1 at 3]. On March 12, 2019, Defendant sent both Plaintiff and his spouse written notice of the default, to the Property address, by certified mail return receipt requested [Dkt. 26-5]. Plaintiff was told if he failed to cure the default on or before April 11, 2019, the Loan would be accelerated [Dkt. 26-5 at 2]. On October 15, 2019, Defendant sent a Notice of Acceleration and Notice of Posting and Foreclosure Sale to both Plaintiff and his spouse, at the Property address, by certified mail [Dkt. 26-6]. Sent therewith was a Notice of Trustee's Sale and Appointment of Substitute Trustee [Dkt. 26-6 at 4]. In sum, Plaintiff was informed that the entire amount due and owing under the Loan had been accelerated and that a Trustee's Sale was scheduled for November 5, 2019 [Dkt. 26-6 at 4]. Following Defendant's Notice of Acceleration and Notice of Posting and Foreclosure [Dkt. 26-6], Plaintiff filed the instant suit, halting the scheduled foreclosure. To date, no foreclosure sale has occurred [Dkt. 26 at 9].

## ANALYSIS

### *Improper Notice of Default/Notice of Acceleration*

Plaintiff's live pleading asserts that the "notices provided by Defendant[] are insufficient under Texas law[,]" specifically pointing to the Notice of Default and Notice of Acceleration [Dkt. 2 at 3]. Defendant argues to the extent Plaintiff seeks to assert a claim under § 51.002 of the Texas Property Code, no private cause or right of action exists [Dkt. 26 at 8-9]. And further, to the extent Plaintiff intends such assertions as a claim for wrongful foreclosure, Texas law does not recognize a claim for wrongful foreclosure when no foreclosure sale has occurred [Dkt. 26 at 9].

### Texas Property Code 51.002 Does Not Provide Private Right of Action

To the extent Plaintiff alleges a claim under Texas Property Code § 51.002, the Court finds it is without merit. "Texas Property Code Chapter 51 provides a claimant such as Plaintiff, no private right of action to enforce its provisions as courts presently have interpreted it; courts construe such claims instead as those for wrongful foreclosure." *Krishnan v. Zaidi*, No. 4:19-CV-0063-ALM-CAN, 2019 WL 5691986, at *9 (E.D. Tex. Aug. 16, 2019) (citing *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp.2d 701, 708 (N.D. Tex. 2011) ("Breach of the trustee's duty [to comply with the notice provisions of section 51.002] is not itself an independent tort. . . .Instead, breach of this duty may be stated under Texas law as a claim for wrongful foreclosure.")), *report and recommendation adopted*, No. 4:19-CV-63, 2019 WL 4686363 (E.D. Tex. Sept. 26, 2019).

### No Wrongful Foreclosure Claim Where Foreclosure Not Yet Occurred

Moreover, Defendants are correct, Texas does not recognize a claim for attempted wrongful foreclosure. Plaintiff may not maintain a claim for wrongful foreclosure as the record establishes foreclosure has not yet occurred here. *See Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d 403, 406 (5th Cir. 2017) ("A claim of wrongful foreclosure cannot succeed, however, when no foreclosure has occurred.").

*Breach of Contract*

Plaintiff further contends Defendant has breached the Deed of Trust [Dkt. 2 at 4].[4] Defendant rejoins that Plaintiff's claim must fail because: (1) "the Notice of Default complied with the terms of the Deed of Trust as well as Section 51.002 of the Texas Property [Code]" [Dkt. 26 at 6], and (2) the "Notice of Acceleration and Notice of Posting [and] Foreclosure [similarly]

---

[4] Plaintiff wholly fails to identify the provision of the Deed of Trust allegedly violated; on this basis alone Plaintiff's claim is subject to dismissal. Even were the Court to infer that Plaintiff intended to allege violations of Paragraphs 14 and 21 of the Deed of Trust, as Defendant has in connection with its Motion for Summary Judgment, Plaintiff's claim still must be dismissed, as discussed more fully *infra*.

complied with the requirement of the Tex. Prop. Code § 51.002 and provided Plaintiff with at least twenty-one days advanced notice of the foreclosure sale" [Dkt. 26 at 7].[5]

### Proper Notices of Default and Acceleration Provided

Proper acceleration of a note requires a lender to "make demand for payment, give the debtor an opportunity to cure the default, give clear and unequivocal notice of the intent to accelerate, and, in the event that there is no timely cure, give clear and unequivocal notice that it has, in fact, accelerated the debt." *Juarez v. Wells Fargo Bank, N.A.*, No. SA-19-CV-01081-XR, 2020 WL 5709258, at *5 (W.D. Tex. Sept. 23, 2020) (citing *Bastien v. HSBC Bank USA, N.A.*, No. G-13-110, 2013 WL 12100745, at *2 (S.D. Tex. Nov. 27, 2013)). Texas courts have held that proper acceleration of a note that contains an optional acceleration clause requires two separate notices; the holder must send "both a notice of intent to accelerate and a notice of acceleration." *Boren v. U.S. Nat. Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (citing *EMC Mortg. Corp. v. Window Box Ass'n, Inc.*, 264 S.W.3d 331, 335 (Tex. App.—Waco, July 9, 2008, rehearing denied)). Defendant has provided uncontroverted evidence of both proper notice of default and acceleration [Dkts. 26-5; 26-6].

---

[5] Defendant also argues Plaintiff's breach of contract claim fails as he did not perform under the Loan [Dkt. 26 at 7]; however, this argument is misplaced. Courts have more recently clarified that, "where the plaintiff has failed to perform a duty under the contract, such as the duty to pay his mortgage, he cannot maintain a breach of contract action." *Mays v. Wells Fargo Home Mortg.*, No. 3:12-CV-4597-D, 2013 WL 2984795, at *2 (N.D. Tex. June 17, 2013) (citing *Enis v. Bank of Am., N.A.*, No. 3:12–CV–0295–D, 2012 WL 4741073, at *3 (N.D. Tex. Oct. 3, 2012)). But, a borrower's obligation to make monthly payments is independent of a lender's obligations in the event of a default. *Williams v. Wells Fargo, Bank, N.A.*, 884 F.3d 239, 245 (5th Cir. 2018) ("If performance of the terms of a deed of trust governing the parties' rights and obligations in the event of default can always be excused by pointing to the debtor's default under the terms of the note, the notice terms have no meaning."). Thus, because Plaintiffs' breach of contract claim is related to Defendants' alleged failures to uphold its *post*-default obligations under the Deed of Trust, Plaintiffs' default does not preclude their breach of contract claim. *See Adams v. U.S. Bank, N.A.*, No. 3:17-cv-723-B-BN, 2018 WL 2164520, at * 4 (N.D. Tex. Apr. 18, 2018) (concluding a borrower who is in default is not precluded from asserting a breach of contract claim against a bank when the claim arises out of the bank's alleged failure to provide post-default notice); *Thomas v. Wells Fargo Bank, N.A.*, No. 4:17-CV-2070, 2018 WL 1898455, at *3 (S.D. Tex. Apr. 20, 2018) ("Plaintiffs' breach of contract claim is not foreclosed as a matter of law by their failure to satisfy their payment obligations under the Deed of Trust.").

> Paragraph Fourteen of the Deed of Trust states in relevant part:
>
> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property address unless Borrower has designated a substitute notice address by notice to lender.

[Dkt. 26-3 at 9, ¶ 14]. Paragraph Twenty-One states:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.

[Dkt. 26-3 at 12, ¶ 21]. Moreover, § 51.002 of the Texas Property Code states:

> (d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). . .
>
> (e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. . .

TEX. PROP. CODE § 51.002(d), (e). Defendant's summary judgment evidence affirmatively establishes compliance with each of the applicable Loan and Texas Property Code provisions [Dkt. 26-5]. More specifically, the Notice of Default was in writing and sent to Plaintiff (and his spouse) at the Property address as required under Paragraph 14 of the Deed of Trust, and was sent certified mail return receipt requested [Dkt. 26-5 at 6]. *See US Bank N.A., Tr. to LaSalle Bank Nat'l Ass'n v. Parson*, No. 3:20-CV-02104-N-BT, 2020 WL 7295838, at *7 (N.D. Tex. Nov. 20, 2020) (finding that "US Bank provide[d] uncontroverted evidence that Parson received notice of

default and acceleration of the debt" where it provided the court with USPS Certified Mail receipts), *report and recommendation adopted sub nom. U.S. Bank, N.A., Tr. to Lasalle Bank Nat'l Ass'n v. Parson*, No. 3:20-CV-2104-N-BT, 2021 WL 567171 (N.D. Tex. Feb. 12, 2021); *Apac v. AmeriHome Mortg. Co., LLC*, No. 7:20-CV-007, 2020 WL 7658125, at *2 (S.D. Tex. Nov. 12, 2020) (finding summary judgment proper on plaintiff's breach of contract claim where defendant "mailed [plaintiff] a written Notice of Default at the subject property [] via USPS certified mail" and gave plaintiff thirty days' notice to cure the default in order to avoid acceleration). The Notice of Default informed Plaintiff of his default, the amount required to cure, the deadline to cure, and a warning of the intent to accelerate. Plaintiff was sent the Notice of Default on March 12, 2019, and was informed that he had until April 11, 2019 to cure the default [Dkt. 26-5 at 2]. Plaintiff therefore was given the requisite thirty days to cure his default [Dkt. 26-3 at 12, ¶ 21].

The Notice of Acceleration was in writing and sent to Plaintiff (and his spouse) at the Property address as required under Paragraph 21 of the Deed of Trust, and was sent twenty-one days in advance of the foreclosure sale, by certified mail [Dkt. 26-6 at 3-4]. *See Smith v. Bank of New York Mellon*, No. SA-19-CV-00392-OLG, 2020 WL 8340387, at *4 (W.D. Tex. Dec. 7, 2020) "[T]he Texas Property Code does not require that a lender prove that a defaulting borrower actually received the statutorily required notices. Instead, compliance with the § 51.002 merely requires that the mortgage servicer use certified mail to send the notices to the borrower's address on file, and in this case, the record demonstrates that BONY did just that.") (internal citations omitted); *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) ("Service of notice is complete when the notice is sent via certified mail."); *Ayiba v. Wells Fargo Bank, N.A.*, Civ. Action No. H-10-5017, 2011 WL 13248493, at *5-6 (S.D. Tex. Dec. 5, 2011) (finding that defendant-lender properly served plaintiff-borrowers with notice of acceleration when defendant

produced evidence of tracking information from the USPS indicating that the notice of acceleration was delivered). Plaintiff's bald assertion that Defendant failed to provide the required statutory notices (or failed to send them the requisite time in advance), without more, does not rebut Defendant's summary judgment evidence. Summary judgment should be granted on Plaintiff's breach of contract claim. *See Gossett v. Fed. Home Loan Mortg. Corp.*, 919 F. Supp. 2d 852, 860 (S.D. Tex. 2013) ("Because the summary judgment evidence conclusively establishes that Wells Fargo timely sent [the plaintiffs] Notices of Default by certified mail and a Notice of Acceleration via certified mail on November 8, 2010, Defendants are entitled to summary judgment on [the plaintiffs'] breach of contract claim.").

***Breach of Implied Covenant of Good Faith and Fair Dealing***

Plaintiff asserts Defendant breached the implied covenant of good faith and fair dealing, by "unilaterally interfere[ing] with Plaintiff's right to cure the default under the note by failing to timely provide an accounting of sums owed and the amount required to cure" [Dkt. 2 at 5]. Defendant argues that Plaintiff has not produced any competent evidence that would demonstrate a special relationship giving rise to such a duty [Dkt. 26 at 9].

"The law is clear that [] a duty of good faith and fair dealing 'is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power.'" *Godfrey v. Wells Fargo & Co.*, No. 5:16CV79-RWS-CMC, 2017 WL 872679, at *5 (E.D. Tex. Jan. 9, 2017), *report and recommendation adopted,* No. 5:16-CV-00079-RWS, 2017 WL 841152 (E.D. Tex. Mar. 3, 2017) (quoting *Water Dynamics, Ltd. v. HSBC Bank USA Nat. Ass'n*, 2012 WL 34252, at *6 (N.D. Tex. 2012) (quoting *FDIC v. Coleman*, 795 S.W.2d 706, 708-10 (Tex. 1990))). The Fifth Circuit has explicitly refused to recognize any duty of good faith and fair dealing in the lender-borrower relationship. *Calhoun v. Stearns Lending, LLC*, No. 4:19-CV-

00055-ALM-CAN, 2020 WL 2478542, at *7 (E.D. Tex. Jan. 28, 2020) (citing *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 329-30 (5th Cir. 2013)), *report and recommendation adopted*, No. 4:19-CV-55, 2020 WL 1226968 (E.D. Tex. Mar. 13, 2020). In the instant case, Plaintiff has produced no evidence of a "special relationship" existing between Plaintiff and Defendant. The only relationship demonstrated between the Parties is that of mortgagee and mortgagor. The Court recommends that Defendants be granted summary judgment as to Plaintiff's claim for breach of the duty of good faith and fair dealing.[6]

*Alleged Violations of RESPA/Regulation X*

Plaintiff avers that Defendant violated RESPA and Regulation X by "dual-tracking", moving forward with foreclosure while he had a loan modification application pending [Dkt. 2 at 6]. In making this allegation, Plaintiff seemingly relies on his purported submission of a loan modification application on or around October 2019 [Dkts. 26 at 11-12; 26-1 at 3]. Defendant argues Plaintiff's claim under 12 C.F.R § 1024.41 fail because Plaintiff's 2019 loss mitigation application was his second, not first application, and that, in any event, his 2019 application was incomplete [Dkt. 26 at 11-12].

Lenders are only required to comply with the notice requirements under § 1024.41 for a first loss mitigation application. *See* 12 C.F.R § 1024.41(i); *Germain v. US Bank Nat'l Assn as*

---

[6] Defendant further argues that to the extent Plaintiff intended to assert a claim for violation of the duty of cooperation, such claim also fails [Dkt. 26 at 9-10]. A "duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract[.]" *Dick v. Colorado Hous. Enterprises, L.L.C.*, 780 F. App'x 121, 124 (5th Cir. 2019). The duty to cooperate is a "promise that a party will not do anything to prevent or delay the other party from performing the contract." *Id.* (citing *Texas Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 698 (5th Cir. 1989)). However, Plaintiff has not identified how Defendant hindered, prevented, or interfered with Plaintiff's ability to send in his required payments under the loan. Plaintiff makes only a bald assertion that Defendant "interfered with Plaintiff's right to cure the default under the note" [Dkt. 2 at 5]. The nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers*, 951 F.3d at 307. Here, Plaintiff has not carried his burden to show Defendant interfered with his right to cure the default under the note (providing no evidence of attempts to cure), nor has he established he requested an accounting. Additionally, as Defendant correctly contends, the Notice of Default informs Plaintiff that the past due balance on his account was "$44,318.92" and encouraged Plaintiff to "contact Arvest [] for an exact amount owed on the date payment is made" [Dkt. 26-5 at 2]. Defendant did not breach the duty of cooperation to the extent such a claim is asserted.

*Tr. for Morgan Stanley Mortg. Loan Tr. 2006-7*, 920 F.3d 269, 276-77 (5th Cir. 2019) ("It would be absurd, and contrary to the provision regarding duplicative requests, to require repeated compliance with this requirement. The regulation builds in sufficient protections for borrowers; repeated compliance is not necessary for their protection in this case."); *Couch v. PHH Mortg. Corp.*, No. 4:19-CV-935-A, 2021 WL 200519, at *2 (N.D. Tex. Jan. 20, 2021) ("Plaintiffs also refer to 12 C.F.R. § 1024.41, but they have not pleaded facts to show that the alleged violation concerned their first loss mitigation application. A servicer is only required to comply with the requirements of § 1024.41 once.") (internal citations omitted). Defendant has furnished Plaintiff's first loan modification, granted in 2009 [Dkt. 26-7], conclusively establishing that any application submitted by Plaintiff in October 2019 was not his first. Moreover, § 1024.41(g) only applies where "a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale." *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016). Defendant's Default Risk Manage/Vice President, Andrew S. Gordon, confirms via affidavit that Plaintiff failed to "submit a complete loss mitigation to Arvest and has also failed to submit any of the requested documentation to Arvest" [Dkt. 26-1 at 3]. Thus, even if Plaintiff's 2019 loan modification application had been his first (which it is not), his failure to submit a complete application precludes any claim for violation of noncompliance with the notice provisions in § 1024.41. Summary judgment should be granted on Plaintiff's RESPA/Regulation X claim.

***Alleged Violations of TDCA***

Plaintiff alleges that "Defendant's attempts at non-judicial foreclosure constitute a violation of State versions of the Fair Debt Collection Practices Act" [Dkt. 2 at 6]. Defendant avers that to the extent Plaintiff asserts violations of the Texas Finance Code §§ 392.301(a)(7), 392.301(a)(8), Plaintiff's claim fails [Dkt. 26 at 12-14].

To state a claim under the TDCA, a plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a "debt collector" within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's wrongful act. TEX. FIN. CODE §§ 392.001 *et seq*. The Fifth Circuit has held, as it relates to the TDCA, that mortgage "servicers and assignees are debt collectors, and therefore are covered, under the TDCA."[7] *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *accord Starling v. JPMorgan Chase Bank, N.A.*, No. 3:13-CV-777-M-BN, 2013 WL 4494525, at *7 (N.D. Tex. Aug. 22, 2013) ("Because Defendant is attempting to collect on the mortgage note and foreclose on the Property, it is a debt collector under the TDCA.").

In the instant case, Plaintiff cannot show a violation of the TDCA. As discussed *supra*, Defendant complied with all the notice requirements both for default and acceleration. Section 329.301(a) prohibits a debt collector from using "threats, coercion, or attempts to coerce that employ any of the following practices," including "(7) threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without

---

[7] The Court notes that the TDCA and the federal Fair Debt Collection Practices Act ("FDCPA"), although similar, differ as to the definition of "debt collector." Under the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Generally, pursuant to the FDCPA, mortgage companies and loan servicers are not debt collectors as defined by the FDCPA. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (noting that the legislative history of the act indicates that a "debt collector" does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned); *Sheddy v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-2804-M (BF), 2013 WL 5450288, at *4 (N.D. Tex. Sept. 30, 2013) ("[C]ourts in the Fifth Circuit have held that the term 'debt collector' does not include lenders, the consumer's creditors, a mortgage servicing company, or assignee of a debt, as long as the debt was not in default at the time it was assigned."). In contrast, the TDCA is much broader, explaining that a debt collector "means a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." TEX. FIN. CODE § 392.001(6).

proper court proceedings" and "(8) threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(7)-(8). However, courts in the Fifth Circuit have repeatedly held that "[§] 392.301(a)(7) simply does not apply to non-judicial foreclosure." *Cantu v. Freedom Mortg. Corp.*, No. 3:19-CV-01701-B, 2021 WL 356840, at *4 (N.D. Tex. Jan. 4, 2021) ("The Fifth Circuit has, consequently, established that § 392.301(a)(7) 'simply does not apply to non-judicial foreclosure.'"), *report and recommendation adopted*, No. 3:19-CV-01701-B, 2021 WL 351409 (N.D. Tex. Feb. 2, 2021); *Spraggins v. Caliber Home Loans, Inc.*, No. 3:20-CV-01906-S-BT, 2020 WL 8366645, at *14 (N.D. Tex. Dec. 31, 2020) (same), *report and recommendation adopted*, No. 3:20-CV-1906-S-BT, 2021 WL 311869 (N.D. Tex. Jan. 29, 2021). The Deed of Trust explicitly provides for acceleration and power of sale upon default by the borrower [Dkt. 26-3 at 12]. Thus, Plaintiff may not maintain a claim under § 392.301(a)(7), challenging Defendant's acceleration of the Loan and subsequent posting of the Property for non-judicial foreclosure sale. *See Cantu*, 2021 WL 356840, at *4.

Under § 392.301(a)(8), a mortgage servicer may not collect a debt by "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). However, foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage. *Cruz v. Bank of Am., N.A.*, No. 3:19-CV-340-M-BN, 2020 WL 4561855, at *7 (N.D. Tex. July 10, 2020) (citing *Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012)), *report and recommendation adopted*, No. 3:19-CV-340-M-BN, 2020 WL 4569042 (N.D. Tex. Aug. 7, 2020); *see also Clark v. Deutsche Bank Nat. Tr. Co.*, No. 3:14-CV-3590-B, 2015 WL 4093948, at *12 (N.D. Tex. July 7, 2015) ("[T]here is no indication that in foreclosing on the Property, Defendants did anything more than 'exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court

proceedings,' which the TDCPA expressly permits."). Plaintiff admittedly defaulted on his Loan and has made no effort to reinstate; Defendant therefore is not precluded from pursuing its rights under the Deed of Trust. Plaintiff's claims under the TDCA are subject to summary judgment.

*Exemplary Damages and Attorneys' Fees*

Because Plaintiff has failed to state a claim for relief, Plaintiff is not entitled to an award of exemplary damages. *See Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 793 (E.D. Tex. 2019) ("[T]he Court finds that Plaintiff is not entitled to any award of exemplary damages because Plaintiff has failed to state a claim for any cause of action."). Similarly, Plaintiff is not entitled to attorneys' fees as he has failed to state any independent claim surviving summary judgment. *Cuellar v. Selene Fin. LP*, No. 4:17-CV-00729-ALM-CAN, 2018 WL 4572707, at *6 (E.D. Tex. Aug. 31, 2018) ("Because Plaintiff has no viable claim against Defendants, Plaintiff is not entitled to recovery of any attorneys' fees on this matter[.]"), *report and recommendation adopted*, No. 4:17-CV-729, 2018 WL 4566680 (E.D. Tex. Sept. 24, 2018).

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that Defendants' Motion for Summary Judgment [Dkt. 26] be **GRANTED**, and each of Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of February, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE